IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT DUANE PAGE, )
 )
      Plaintiff, )
 )
  v. ) Civil Action No. 16-20-J
 )
COMMISSIONER OF SOCIAL SECURITY, )
 )
      Defendant. )

O R D E R

AND NOW, this 31st day of March, 2017, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 10) filed in the above-captioned matter on June 17, 2016,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 8) filed in the above-captioned matter on May 17, 2016,

IT IS HEREBY ORDERED that said Motion is GRANTED. Accordingly, this matter is hereby remanded to the Commissioner of Social Security ("Commissioner") for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

I.    **Background**

Plaintiff Robert Duane Page protectively filed a claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, on June 10, 2013, claiming that he became disabled on May 31, 2013, due to diabetes, silicosis, plantar fascia, and sleep apnea.[1] (R. 14, 135-36, 162). After being denied initially on September 19, 2013, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on January 29,

---

[1] As will be further discussed below, Plaintiff later also alleged to be disabled due to diabetic neuropathy in both feet.

2015. (R. 28-53, 64-68, 69-70). In a decision dated April 17, 2015, the ALJ denied Plaintiff's request for benefits. (R. 14-24). The Appeals Council declined to review the ALJ's decision on December 4, 2015. (R. 1-4). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II. Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence— particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.'" Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. § 404.1520. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. § 404.1520(a)(4)(i). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522. If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work, see 20 C.F.R. § 404.1520(a)(4)(iv), and the claimant bears the burden of demonstrating an inability to return to this past relevant work, see Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation then moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523.

### III.  The ALJ's Decision

In his April 17, 2015 decision, the ALJ found that Plaintiff met the insured requirements of the Social Security Act through today, March 31, 2017. (R. 16). Accordingly, to be eligible for DIB benefits, Plaintiff had to establish that he was disabled on or before that date. See 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101, .110, .131.

The ALJ then proceeded to apply the sequential evaluation process when reviewing Plaintiff's claim for benefits. In particular, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date of May 31, 2013. (R. 16). The ALJ also found that Plaintiff met the second requirement of the process insofar as he had several severe impairments, specifically: silicosis – mild and reversible chronic obstructive pulmonary disease,

mild mediastinal and hilar adenopathy, obstructive sleep apnea, and diabetes mellitus type II. (R. 16-17). The ALJ found that several of Plaintiff's alleged limitations did not qualify as severe impairments, including his plantar fasciitis, diabetic neuropathy, high cholesterol, and post-concussive syndrome. (Id.). The ALJ did state, though, that, while non-severe, he did account for Plaintiff's plantar fasciitis and neuropathy in the RFC. (R. 17). The ALJ concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (R. 17-18).

The ALJ found that Plaintiff retained the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c), except that he must avoid more than moderate exposure to fumes, odors, dusts, gases, environments with poor ventilation, hot and cold temperatures, dampness, and humidity. (R. 18-22). Based on this RFC, Plaintiff established that he is incapable of returning to his past employment; therefore, the ALJ moved on to Step Five. (R. 22).

At Step Five, the ALJ used a vocational expert ("VE") to determine whether or not there were a significant number of jobs in the national economy that Plaintiff could perform. The VE testified that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, including the unskilled jobs of food preparer, linen room stock attendant, and childcare worker. (R. 22-23, 50-52). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 23-24).

## IV. <u>Legal Analysis</u>

Plaintiff's primary argument revolves around the ALJ's treatment of his diabetic neuropathy affecting his feet, and particularly the January 19, 2015 opinion from Kevin Sugalski, D.O., regarding the limitations created by Plaintiff's neuropathy. While the Court does not find one way or another whether the RFC must be amended to include more limitations or whether

Dr. Sugalski's opinion is entitled to more weight, it does find that the facts of this case necessitate remand for further consideration and discussion of these issues.

Although part of Plaintiff's argument is that the ALJ failed to find that his diabetic neuropathy constituted a severe impairment at Step Two of the sequential process, that is not really the issue. It is true that Step Two is a de minimus screening device to dispose of groundless claims. See Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). The Court agrees with Plaintiff that it is hard to see how Plaintiff's neuropathy and its impact on his feet did not at least reach de minimus status. However, the mere fact that the ALJ did not include Plaintiff's neuropathy as a severe impairment does not in itself warrant remand. The Step Two determination as to whether a claimant is suffering from a severe impairment is a threshold analysis requiring the showing of only one severe impairment. See Bradley v. Barnhart, 175 Fed. Appx. 87, 90 (7th Cir. 2006). In other words, as long as a claim is not denied at Step Two, it is not generally necessary for the ALJ specifically to have found any additional alleged impairment to be severe. See Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 145 n.2 (3d Cir. 2007); Lee v. Astrue, 2007 WL 1101281, at *3 n.5 (E.D. Pa. Apr. 12, 2007); Lyons v. Barnhart, 2006 WL 1073076, at *3 (W.D. Pa. March 27, 2006). Since Plaintiff's claim was not denied at Step Two, it really does not matter whether the ALJ correctly or incorrectly found Plaintiff's diabetic neuropathy to be non-severe.

What does matter is whether the ALJ adequately considered the neuropathy affecting Plaintiff's feet in determining Plaintiff's functional capacity, because even if an impairment is non-severe, it may still affect a claimant's RFC.[2] In assessing a claimant's RFC, the ALJ "must

---

[2] RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001). See also 20 C.F.R. § 404.1545(a). Not only must an ALJ consider all relevant evidence in determining an individual's RFC, the RFC finding "must 'be accompanied by a clear and

consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" S.S.R. 96-8p at *5. See also 20 C.F.R. § 404.1545(a)(2). "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim." S.S.R. 96-8p at *5. Indeed, the ALJ acknowledged as much and purported to include restrictions in the RFC to account for Plaintiff's neuropathy-related foot pain. (R. 17, 21). The problem with his analysis is that there are timing issues in this case that the ALJ did not address and that could very well impact this determination.

Although the ALJ did state that he included in the RFC limitations designed to accommodate Plaintiff's neuropathic foot pain, the only limitation pertaining thereto was limiting him to medium exertional duties which involve standing and walking about 6 hours of an 8-hour work day. (R. 21). The ALJ acknowledged that Dr. Sugalski opined that Plaintiff was more restricted in his ability to stand and walk, but ultimately gave Dr. Sugalski's opinion little weight. (Id.). He instead gave greater weight to the opinion of the consultative examiner, Edward Johnson, M.D., and that of the state reviewing agent, Juan Mari-Mayans, M.D., in formulating the RFC. (R. 20-21). While the ALJ explained his rationale at significant length,

---

satisfactory explication of the basis on which it rests.'" Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" Id. (quoting Cotter, 642 F.2d at 705). See also S.S.R. 96-8p, 1996 WL 374184 (S.S.A.), at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

he did not address the timing issues that raise questions as to the validity of the weight given to these opinions.

Plaintiff's consultative examination with Dr. Johnson was on August 23, 2013, and on that date, Dr. Johnson wrote his opinion that Plaintiff could perform medium work with a few other restrictions. (R. 283-300). At this examination, Dr. Johnson noted that Plaintiff claimed that his feet felt like he had calluses all the time with mild numbness, even though he had not, at that time, ever been diagnosed with neuropathy. (R. 283). Dr. Johnson concluded that there was evidence of perhaps mild peripheral neuropathy (R. 284), but overall he found few foot-related issues. Shortly thereafter, on September 4, 2013, Dr. Mari-Mayans, upon reviewing the records, including Dr. Johnson's report, opined that Plaintiff could perform medium work and walk and stand about 6 hours of an 8-hour workday. (R. 59-60). Dr. Sugalski's opinion that Plaintiff has significantly greater restrictions, on the other hand, was from nearly a year and a half later, on January 19, 2015. (R. 457). Under different circumstances, this gap in time may not have mattered, but it did in this case.

Generally speaking, there is no specific limit on how much time may pass between a medical professional's report or opinion and the ALJ's decision relying on it. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Indeed, "there is always a time lapse between the consultant's report and the ALJ hearing and decision." Id. Therefore, under different circumstances, it may not have mattered that the lapse between the opinions of Drs. Johnson and Mari-Mayans and that of Dr. Sugalski (as well as the ALJ's decision on April 17, 2015) was so large. However, here, there were intervening medical records, including Dr. Sugalski's opinion, that at least raised the possibility that Plaintiff's condition had changed over this time. As noted above, the ALJ certainly did consider Dr. Sugalski's opinion, but not in the

context that it was rendered 16 months after Dr. Johnson's findings. The ALJ, in fact, relied on Dr. Johnson's findings as part of his basis for assigning less weight to Dr. Sugalski's opinion. (R. 21). Again, absent additional evidence, this 16-month gap may not have mattered, but there was, in fact, additional evidence that the ALJ did not consider.

As stated above, at the time Plaintiff was examined by Dr. Johnson, he had not been diagnosed with neuropathy and reported relatively mild symptoms in his feet. However, beginning in December of 2013, and continuing through the date of Dr. Sugalski's opinion and the hearing in this matter, Plaintiff began complaining about burning, numbness, and pain in both of his feet on a regular basis. (R. 309, 310, 317, 318). He was, in fact, diagnosed with neuropathy and treated with medication, including Neurontin and gabapentin, neither of which improved Plaintiff's condition. (R. 317, 318). Dr. Sugalski issued his opinion fairly shortly after the last documented treatment of neuropathy in the record, and just a week and a half before the hearing in this case. In weighing this opinion, and those of the consultant and reviewing agent, the ALJ gave little or no attention to the new complaints and diagnoses from well after the consultative examination. In short, he failed to acknowledge that, in the rather large amount of time between Dr. Johnson's opinion and Dr. Sugalski's, the record reflected new happenings that may have supported a finding that Plaintiff's condition had deteriorated over that time. In a case such as this, where there is a substantial amount of new evidence between the date on which an opinion upon which an ALJ relies and the date on which the ALJ renders his or her decision, remand is warranted. See Cadillac v. Barnhart, 84 Fed. Appx. 163, 168-69 (3d Cir. 2003); Grimes v. Colvin, 2016 WL 246963, at *2 (W.D. Pa. Jan. 21, 2016).

Accordingly, the Court is remanding this case so that the ALJ can more properly evaluate the weight to be given to the various medical opinions, and what additional limitations, if any,

should be included in the RFC to account for Plaintiff's neuropathy based on the full factual context of the case. The Court takes no position as to the ultimate resolution of these issues, and it will leave to the ALJ's discretion whether any additional consultative evidence is needed in light of the evidence post-dating Dr. Johnson's findings.[3]

## V.     Conclusion

In short, the record does not permit the Court to determine whether the findings of the ALJ regarding Plaintiff's diabetic neuropathy, and its impact on the weight afforded to the medical opinions and in formulating Plaintiff's RFC, are supported by substantial evidence, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case. The Court hereby remands the case to the Commissioner for reconsideration consistent with this Order.


s/Alan N. Bloch<br>
United States District Judge

ecf:         Counsel of record

---

[3]     Because it is remanding the case on this ground, the Court does not reach Plaintiff's arguments regarding the ALJ's credibility findings, particularly in light of Plaintiff's work history. On remand, the ALJ, of course, should make sure that he evaluates Plaintiff's credibility under the proper standard, including a consideration of his work history.